Ms. Clerk, will you call the next case, please? 3-13-20272, United Consultants, Ltd. v. Dr. Leslie Lindberg, Counselor-at-Large, Iroquois Memorial Hospital, et al., and Police, Wentz, and Rothman. Mr. Boyer? 3-13-20272, United Consultants, Ltd. v. Dr. Leslie Lindberg,  and Police, Wentz, and Rothman. This case, of course, involves the dismissal by the trial court of our two-count complaint that we filed in December 23 of 2008. So it's been hanging for quite some time. The trial court dismissed this case on the basis of limitations and more particularly 735-ILCS-5-13-217. And I believe it's important that I review the procedural facts a little bit here so that there's no confusion as to what those were. This matter actually started as a federal suit in the Central District of Illinois. And in the federal suit, we alleged the violation of the U.S. Wiretap Act. That was the federal claim. And then we attached various state claims, torturous interference, which is the same as what we have here in this particular case. Judge Baker awarded summary judgment to the defendant on the basis that we could not prove there was a wiretap or that there was an eavesdrop. And as a matter of fact, at the same time, dismissed the state claims as the court lacking supplemental jurisdiction. We filed a motion to reconsider or a motion to alter under federal rule of civil procedure section 59. That was done in a timely manner. The judge did not decide that case. He took him eight months. He did not decide that case until August 25 of 2008, and of course, which he denied. And when he denied it, we appealed to the Seventh Circuit Court of Appeals, and Judge Baker was reversed. But that really has nothing to do with this case, the reversal. But in the meantime, while the case was on appeal, we filed this case in state court as a protective action, alleging the state law claims that we had and also the violation of the Illinois Eavesdropping Act. We filed this case, the state case, and Judge Albrecht granted on my motion a stay of the proceedings pending the outcome of the federal court. It was a case. It was on appeal, hadn't been decided yet, and she granted my motion for a stay. Eventually, the Seventh Circuit rendered their decision, reversing Judge Baker. The case was then set for trial, and when it was set for, and before it got to trial, however, for various reasons, we decided, and Dr. Lindbergh decided, to not proceed in federal court, and we took a dismissal DWP. Actually, it was a dismissal with prejudice, rather than as far as refiling in the federal court was concerned. Then when that happened, the attorney for the defendants in this case wrote Judge Albrecht a letter and said, the federal case is over. It's been dismissed. It's time for you to rule on our motion to dismiss, and with a matter of days, she does just that, and she grants the motion to dismiss filed by the defendants on the basis that we did not file it timely. We exceeded the year, this period of time, from when Judge Baker originally dismissed the supplemental claims in federal court, and she gave no reason for her dismissal, other than that statutory section, and I filed a motion to reconsider in which she responded by filing a memorandum affirming her original decision and dismissing on the basis of the statutory provision that gives you a refiling can take place within the remaining period of the statute of limitations or a year from the original dismissal. So the principle at this point in time, the principle issue in this case, was when was the final decision rendered by the federal district court and how much time did we, and to determine how much time we had to file the state law, the state case. The judge in this case relied upon the case of Wade versus Biles, which is cited in both of our briefs, and I'm suggesting to this court that she misanalyzed that case and misanalyzed the case of Bowers versus the village of Palatine, which is the case that the plaintiffs relied upon. In Wade versus Biles, it simply set forth the principle that I think we all knew, and that was there is no tooling of the statute of limitations when a case is on appeal. But Bowers versus the village of Palatine indicates that when there is a post-trial motion or a motion to reconsider or something challenging the judge's original decision, the statute is not told until he renders a decision on the motion to reconsider. And that's what a Rule 59 motion is. It's a motion to alter the judgment that's considered a motion to reconsider. And Judge Baker did not revise his decision, and he made his ruling on August 25, 2008. So the one-year statute of limitations started running from that date under the principles in Bowers, not from December 18, 2007, which is what the judge ruled, the trial judge ruled, because of the granting of summary judgment and the dismissal of the supplemental claims. When we filed this... You're saying it's August 25, 2008. That's right. That's when he denied our motion to reconsider. And we filed, when he denied that, we filed this complaint in state court on December 23, 2008, well within the one-year period from the dismissal. Now, the defendant in this case argues that, okay, we filed the motion to reconsider or the Rule 59, but it only applied to the federal claim, the Wiretap Act violation. But that's not true. When we filed the motion to reconsider the motion for summary judgment, it included everything. And if the judge had granted our motion to reconsider and reversed his decision to grant summary judgment, the state claims would have automatically have been reinstated. That's not necessarily true unless you requested them to be reinstated. No, I think that's true, Your Honor. And I will admit that subsequently, long after this, we made a statement to the effect that we did not want state claims reinstated, and that was after we had filed this suit. But the federal statute that I am referring to, which I think I brought, yes, is 28 U.S.C.A. 1367. Okay, that helps me. Thank you. Okay, and that says that in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over other claims that are so related and so forth and so on. So the reliance by the court and upon the defendants of the Wade case, I submit, has been misplaced. And I submit to Your Honor that we filed this in a timely manner. Now, I want to mention one other thing about this whole procedure. The court stayed the proceedings pending the outcome of the federal court, and she admitted that when she wrote her memorandum of opinion upon my motion to reconsider. But she decided this case without giving us an opportunity for a hearing, to cite any authority, to argue the case, and she did that based upon a letter that she received from the defense attorney. So we were deprived of not only the opportunity to argue about the statute of limitations problem, but we were denied an opportunity to present any facts, affidavits, argument, cases, and whatever with regard to the other issues, which were raised in the defendant's motion to dismiss. Due process, of course, and I've cited numerous cases in my brief, indicate that when she did not give us an opportunity to brief the issue and making a decision without it deprived my client of some very fundamental and basic rights. And I did talk about the other issues that the defendant raised in their brief, because this court obviously has the power to affirm if you find some other basis for affirming her decision to dismiss. The trial judge never ruled on any of the other situations. She did not. The trial judge has ruled on one specific. On the limitations problem. But I raised other issues in the brief because I was afraid that you might say, well, Is there any other reason in the record? That's right. That's right. And I was afraid that because this is a suit against a hospital, that the principle of non-review of hospital decisions by the courts may come to haunt me if I didn't raise the issue at that particular time. And I'm prepared to discuss that. The other thing I would like you to talk about briefly is the wiretap eavesdropping. Yes. The eavesdropping issue. Is that treated separately from the rest of the claims? Or should we be treating it separately? It was in separate counts, both in the federal suit and in the state suit. We alleged in this suit the violation of the eavesdropping act. And then we also alleged torturous interference. And we alleged they were interconnected because some of the eavesdropping was part of the torturous interference. So they're connected to that extent. But they are separate counts, and they were separate counts in the federal suit as well. I have a question regarding procedure. You said that Judge Albrecht ruled on the pending motions to dismiss, and there were two pending motions to dismiss. There were multiple ones, Your Honor. Some individually and some filed as joint motions by all defendants. But wasn't your client allowed an opportunity to argue the joint motion to dismiss on November 15, 2010, and then argued the motions again on January 12, 2011? I remember that we appeared in court at one time and argued one of the motions, even though the stay was still in effect. Yes. And I didn't raise the issue at the time. But the judge never rendered a decision of any kind. And obviously she considered the stay in effect until she rendered her decision. But you had a motion pending to further stay the proceedings, but you still argued the motion to dismiss. Yeah. So it seems like you abandoned your request for the stay. No. And the trial court did not consider that an abandonment either because she didn't rule until after the federal case was over, and she said in her memorandum of opinion that the case had been stayed. So I don't think the trial judge considered it an abandonment because I participated in that one hearing. Okay. So after you argued the motion to dismiss on January 12, 2011, what more would you have added that Judge Albrecht didn't allow you to present to her? Well. File any other pleadings or requests? I honestly don't remember whether the other motions to dismiss were filed before or after that date. The defendants first filed a combined motion to dismiss for everybody. And then while the stay was in effect, I do remember that, they filed individual motions to dismiss. My reading of the record is something happened. During the hearing on the first motion, Judge Albrecht must have indicated something, and then all of a sudden these individual motions appeared. I don't know why they did that. I do not know. And you talk about the federal action as if there was only one federal action. There were two federal lawsuits, weren't there? There were several. There may have been three, as a matter of fact. But the one that I am talking about, the one that is relevant to this case, is only the one where Judge Baker granted summary judgment, in my opinion. Okay. With some of my confusion. Okay. Sorry. I'm sure I contributed to the confusion, and I apologize for that. It's a procedurally complicated case. It is. Your Honor, I have nothing at this point to add. If the court is interested in that non-review issue, but I think we're here mostly just for the statute of limitations problem. So I have nothing else to say with regard to that. Any other questions? Thank you, Mr. Boyer. Thank you. Ms. Agnew. May it please the Court. Counsel. Plaintiffs have presented a couple of arguments for reversal before you. I'll submit to you, and as you know, none of these arguments were presented to the trial court before it dismissed the complaint. Some arguments were presented in a motion to reconsider. Some arguments were presented for the first time in their opening brief, and some arguments were presented for the first time in the reply brief. This is not a case where the plaintiffs did not have notice and opportunity to present their oral and written arguments. This is instead a case where they took a wait-and-see approach. They wanted to wait and see how they would fare in federal court, and for that reason, they didn't present any written arguments to the trial court with respect to our motions to dismiss. They didn't file any oppositions, and the first thing they did was file something after the court ruled in a motion to reconsider. The record is clear, as Justice Wright has indicated, that there were two hearings on defendants' motions to dismiss, one on November 15, 2010, and another on January 12, 2011. Plaintiffs appeared at both of these hearings after having received notice. They filed no oppositions before either hearing. The excuse they offer is without merit. They argue that the matter was stayed and that nothing happened after defendants filed a motion to dismiss on April 6, 2009. The record, however, in the docket clearly indicates otherwise. It is true that the matter was stayed while the federal court was pending appeal before the Seventh Circuit, but after the Seventh Circuit ruled, there was no reason any longer for the stay. And so after the defendants set the motions for hearing, and that notice was sent on September 30, 2010, plaintiffs filed a motion to stay on November 12, 2010. If they thought the matter was stayed, why did they see the need to file then a second motion to stay? Was the other stay lifted? Pardon me? Was the other stay lifted? I don't know that there's anything in the record that specifically said the stay was lifted, but obviously they thought they needed to file another motion to stay to get that kind of relief. There's nothing in the record saying it was lifted? Not that I recall, Your Honor. Did you file your motion to dismiss by that time? We had filed a motion to dismiss on April 6, 2009, and then after the Seventh Circuit reached its decision, we set the matter for hearing. We sent plaintiffs' counsel a letter saying, this is our intent, if you need more time for briefing, please let us know. And then on November 15, 2010, the docket provides that both plaintiffs and defense counsel were present, arguments heard on motion to dismiss and motion to continue and for a stay of proceedings. Cases continued to 1-12-11 at 1-30 p.m. And then underneath that it says, motion dismissed set for January 12, 2011 at 1-30. So it's clear that Judge Albrecht believed that we were going to hear those motions to dismiss on January 12, 2011. And also, while I wasn't present at the hearing in September 2010, my co-counsel was present, but after that we filed individual motions to dismiss with respect to each of the parties because of something that Judge Albrecht said. But we don't have a transcript of that here. No, there's no transcripts of the hearing. Did you argue those motions? I was present at the January 2011 hearing and I argued those motions. And as you can see, what Judge Albrecht entered in the docket was, matters taken under advisement. So it's clear that she was considering the motions to dismiss at that point in time. So this is not a case where the plaintiffs were not given due process. And, in fact, when they filed their motion to reconsider, they had yet another opportunity to raise arguments. So they did have opportunity both in the two arguments before the motion to dismiss and in their motion to reconsider. Going to the statute of limitations issue, I think there are other reasons the court can affirm it. It's not just the statute of limitations issue. But jumping to that issue first, we believe that the trial court correctly found that the Count 2 wiretap claim was correctly dismissed because it was time barred. The state wiretap claim that had originally been filed in federal court was dismissed by the federal court on December 18, 2007, and there was a judgment entered. There were separate judgments entered. There was one judgment on the summary judgment entered, and there was one judgment on the state court claim. They were separate judgments. Under statute, when a state court claims are dismissed for lack of jurisdiction, the plaintiff can commence a new action within one year. Here that did not occur. The plaintiff argues that the time was told because he sought reconsideration of the dismissal of the federal wiretap claim. He never asked the federal court to reconsider the dismissal of the state law claims. In fact, he specifically represented to the court that he did not ask the state law claims be reinstated. I think it's also unusual in that... In the state law claims, weren't they strictly dependent or dependent, if you will, on the federal claim? Not all of them. There was some tortious interference claim that kind of went beyond the federal wiretap claim. There was an invasion of privacy claim as well. But irrespective, no action was ever taken, either on appeal to the Seventh Circuit or on the motion to reconsider to have those state law claims reinstated. And plaintiff's counsel...  Pardon me? How could the state claims be reinstated if the federal claim wasn't reinstated in federal court? How could that happen? What could have happened, though, is when he asked for a reconsideration of the motion for summary judgment on the federal wiretap claim, he could have asked reconsideration with respect to this... If the court had reconsidered the federal claim and reversed itself, wouldn't dependent claims have stayed operative at that point? I don't think so. Because the judgment... Because they would have been dropped out? Yes. Because the judgment had already been entered. And taking your point a little bit further, assuming that's the case, when it was remanded from the Seventh Circuit, accepting plaintiff's argument would mean that the state law claims would have been reinstated at that time, and they weren't. And plaintiff's counsel argued they were not. So nothing was ever done. And I do believe that if they want to request that those state law claims be reinstated, something had to be done before the Seventh Circuit, and nothing was done. And so on remand, it was plaintiff's position that they weren't reinstated, and it was the court's position as well. So I think to say that it's automatically reinstated I don't think is entirely accurate, and it's not how it was treated in this case. Counsel, can I interrupt you again on procedural technicality? With respect to either the joint motions to dismiss or the individual motions to dismiss that were filed later, did any of them challenge Count 1 of what I call Limburg Free, which is a state court action based on timeliness, based on the statute of frauds? No. And the reason for that is... Okay, Judge Albrecht's decision dismissed it only based on the statute of frauds. Not statute of frauds. Statute of limitations. And I agree. And the reason that we didn't raise that as to Count 1 is because there were two federal claims. There were two federal lawsuits. One was an antitrust action, and this tortious interference claim in this case was from the antitrust claim, and that was dismissed in mid-2008. So therefore, there wasn't the one-year refiling time period problem. But she dismissed it. I agree. But that's not what we argued. Okay, and when you say we can affirm on other grounds, I presume that's why you want us to reach other grounds? Yes. Would you be satisfied if we remanded for Judge Albrecht to address those issues? I think that the court can address those issues clearly on the rule of non-review because it's well-established in the Illinois court systems that there's no tortious interference claim for the kinds of allegations that they've been making in this case, i.e. interference. But we don't have a decision to review issued by Judge Albrecht on the doctrine of judicial non-review. It's my understanding that the court can affirm on any basis that's supported by the record, and for that reason, that is why I would suggest to the court that you could affirm the dismissal of Count 1 because there is no cause of action under the rule of non-review. And maybe I didn't understand your question. No, you did. Okay. But I believe that the court, even if Judge Albrecht didn't reach the rule of non-review, I think this court can and can affirm dismissal on that grounds. And if you'd like me to address the rule of non-review, I'd be happy to do that here. You have answered my question. I'll leave it up to the other panel members whether they want me to go into it. If you want to do it, go ahead. Otherwise, continue where you were. Sure. We believe that the Count 1 for tortious interference was properly dismissed also under the rule of non-review. The background in this case is clear based on the allegations that Dr. Lindbergh was a staff member at the hospital. He provided radiology services. He alleges that the defendants, Steve Lurk and Rosby, engaged in actions to promote another radiologist at the hospital and to ask others in the hospital to refer to that other radiologist. But the rule of non-review provides that a physician has no cause of action under such allegations. It holds that internal staffing decisions by hospital administrators are not subject to judicial rule because the hospital has the inherent right to tell staff what resources and products to use without fear of liability. And the rationale for this rule is that the courts are not willing to substitute their judgment for those of hospital administrators. There is a limited exception, but I don't believe that applies here, and I don't think plaintiffs are arguing that it applies here. Plaintiffs argue two reasons why they think this rule shouldn't apply. They claim that it doesn't apply when acts are directed at physicians and patients, but clearly that position has been considered and rejected by the Illinois Supreme Court in Barrows v. Northwestern, and I've cited that case for the court. I won't go into detail. They also argue that the rule of non-review is limited to the denial and granting of privileges. Again, this particular argument was considered and rejected by the court in Goldberg v. Rush University, and in that case the plaintiff made allegations similar to what are being made here. In other words, the defendants favored one physician over another, and plaintiffs argued rule of non-review only applies to granting privileges or denying privileges. The court said no. What the rule of non-review extends to is staffing-related decisions, and it said that hospitals have the discretion to make routine clinic staffing assignments to allocate resources and personnel, and that's essentially what Dr. Lindbergh is arguing in this case, is that the defendants promoted one physician over another, one physician group over another. The rule of review says that is not something for which you can have a tortious interference claim. I thought what he was alleging, or at least one of the things he was alleging, was that the hospital administrator threatened other doctors or administrators that if they hired him, they would be punished. That may be one of the big allegations that are made, but I think that still goes into hospitals promoting or asking their own staff members to use a particular provider for services, and I think that... He alleges there were threats, not just requests. And even if there's threats, I still think that the rule of non-review would cover that because... What if the hospital administrator shoots somebody? Well, I think that's a different... Is that beyond the kin? I think that's a different story that we're not talking about interference with business relations. We're talking about... Simple. Thank you. So the rule of non-review application doesn't depend upon whether the plaintiff's relationship is with another physician, a hospital, or a patient. Its application is not limited to appointments and privileging. And what it holds is there's no tortious interference claim where the alleged conduct impacts the exercise of the physician's privileges at hospital. And in closing, very quickly, also I would note that plaintiffs can't plead recoverable damages because their damages are speculative. And that issue was addressed in the federal antitrust case that involved Dr. Zelenberg and was against the hospital. And the federal court said lost income from lost referrals is speculative and would be difficult to determine. So I think they're also foreclosed by collateral stopped from trying to plead damages for lost referrals, which is what they're asking for in this case. Finally, with respect to count two for the tortious interference claim, excuse me, the wiretap claim, plaintiffs agree that Steve Lurk is no longer a defendant with respect to that particular count two. And also they argued for the first time in their brief before the court that the hospital can't be liable or that the hospital can be liable under the Wiretap Act. We argued in the motion to dismiss that the hospital couldn't be vicariously liable under the Illinois Wiretap Act. They didn't address that argument until the opening brief in this court. Therefore, they had a chance both in the motions to dismiss and the motion to reconsider. They didn't even raise it in the motion to reconsider, so we think it's been waived. And they argue that because of something the federal court said on a federal wiretap claim, that the hospital can be liable in Respondent Superior. But that court was construing federal law. We're talking about state law. And they also argued for the first time in their reply brief before this court that the hospital is a principal. And again, we think that argument's been waived. Also, the Seventh Circuit conclusively held that the Board of Trustees had no knowledge any recording was obtained as a result of a legal wiretap. So for that reason as well, any such claim would be barred by res judicata. Thank you. I'm sorry. I'm so sorry. I have another question. I'm struggling with the fact that we don't have pleadings on the motions to dismiss from counsel. But he argued the motions to dismiss, opposed them. But I can't reconstruct what those arguments were  because I don't have a transcript of the hearings. Can I surmise from Judge Albrecht's silence as to the other grounds to dismiss, such as failure to state a cause of action? And I think res judicata was raised. What can I surmise from that? Were those arguments not made? Were they not? I make a loss as to how we can affirm her on other grounds. And I can't tell whether those issues were argued. From your point of view or theirs. I think there were arguments made on the motion to reconsider and those arguments were those that were set forth in Mr. Boyer's brief on the motion to reconsider. With respect to hearings on the motion to dismiss when I was present, I think it was a wait and see kind of approach. Neither side argued? I did. Failure to state a claim of action? On the motion to dismiss in January 2011, I made the arguments that were identified in our briefing. Then why weren't we provided with a record? No record was... I don't believe a recording was... It's Iroquois County? Yeah, I don't believe that... We did make effort to request after the fact and no recording was made. All right. Were they alleged in the motion on those issues? Were there allegations in the motion about the motion to dismiss? Were all the arguments that I've made before you today and in our briefing in the motions to dismiss, yes. They're in the written motion to dismiss, but we can't reconstruct whether you argued those issues to Judge Albrecht other than what you're saying is... And all I can do is represent to you as an officer of court that those arguments were put before Judge Albrecht in January 2011. Anything else? No. It's used to me being present. Judge Carter. Thank you very much.  Thank you, Judge. You're welcome. For rebuttal, I simply want to give you my observations regarding this issue of the stay. The stay was clearly entered, as indicated by the record. As Your Honor indicated, the stay was never lifted. There's nothing in the record, in the minutes, in the docket, ever indicating that that stay was ever lifted. And the judge itself, and I've said this three times before and at the risk of boring, she indicated the stay was in effect when she entered her order. Isn't the stay really a red herring in state court? Because the stay doesn't affect the timing of whether you filed the lawsuit in a timely fashion with respect to the dismissal of the federal court. It has nothing to do with... I think the stay is kind of a... I know it troubles you a bit, but it's just a red herring. The stay in state court doesn't affect the merits of whether you filed in a timely fashion. That's exactly right, Your Honor. But I raised it in my brief because counsel in the defendant's brief had said, well, we've waived all of our arguments because we never presented it to the trial court. And the reason that we didn't present any briefs, arguments, evidence to the trial court was that stay was in effect, and I wanted to honor that stay. But then you argued. I argued on that one occasion, yes. Mea culpa. I should never have done that, but I did. But we did nothing in writing, and the judge ruled in sui sponte that the defendant's motion to dismiss on the basis of limitations is granted. I need... I should, to a culpa. It isn't the fact that you argued, does that give grounds for any waiver argument? It could, Judge, but I think that we were... I think that would be unfair because of the fact that the judge obviously considered the stay to be in effect all the way through. And I understand what Your Honor is saying. I need to talk about the rule of non-review, of judicial review, just for a minute, because counsel brought it up. And, Judge, that rule of non-review, of course, is designed to keep the courts out of hospital staffing decisions. And you can only review to make sure if someone is dismissed from the hospital or denied staffing privileges, you can only review to see that this hospital has followed its own rules and regulations regarding the decision that they made. That's what that is all about. This lawsuit, our complaint, regarding the actions of Mr. Verk and Iroquois Memorial Hospital is not designed to interfere in the hospital's decision. The complaint is not a staffing complaint. It has nothing to do with the efforts of Iroquois Memorial Hospital to deprive Dr. Lindbergh of his livelihood. He still works. What it is, it is the actions of Mr. Lurk and the hospital administration in going outside and threatening, which was actually what was done. It's even in the complaint that the hospital threatened other physicians that if they went to Dr. Lindbergh, this would happen. One of the allegations was that the hospital told Dr. Villafrea that if she did any business with my client, that the hospital would sever their relationship with the clinic that she operated. So this is not a staffing decision that we're complaining about. It's the torturous interference. One last thing, Judge. Counsel mentioned that the respondents appear here, that the hospital could not be liable for an eavesdrop of one of its patients. My response to that was Seventh Circuit rendered a decision reversing Judge Baker. That argument was made, and yet the Seventh Circuit, while throwing out some of the defendants that we had originally named, specifically made Iroquois Memorial Hospital would be liable if the ultimate judgment was delivered. In other words, the Seventh Circuit threw out some of the individual defendants from that eavesdrop case, but they did not throw out Iroquois Memorial Hospital, which means that respondents superior, according to the Seventh Circuit, would apply to the eavesdropping act. Did they specifically rule on that? They did not, but it was argued. But they did not rule specifically on it? They did not, no, sir. Thank you, Your Honors. Thank you, Mr. Boyer, and thank you both for your argument today. We will take this matter under advisement, get back to you with a written disposition within a short day, and we'll now take a short recess for panel discussion.